# UNITED STATES DISTRICT COURT
# DISTRICT OF MINNESOTA

UNITED STATES OF AMERICA,            Criminal No. 09-382 JMR/AJB

        Plaintiff,

v.                            **REPORT AND RECOMMENDATION**

JIMMY PIERRE SYNKIEW,

        Defendant.

        Michael A. Dees, Esq., Assistant United States Attorney, for the plaintiff, United States of America;

        Andrea K. George, Esq., Assistant Federal Defender, for the defendant, Jimmy Pierre Synkiew.

This action came on for hearing before the Court, Magistrate Judge Arthur J. Boylan, on January 27, 2010, at the U.S. Courthouse, 316 North Robert Street, St. Paul, MN 55101. Evidence was received at the hearing with regard to suppression of statements and suppression of search and seizure evidence.

Based upon the file and documents contained therein, along with testimony and exhibits presented at hearing, the Magistrate Judge makes the following:

**Findings**

**Vehicle Stop.** Defendant Jimmy Pierre Synkiew was stopped by Minneapolis Police Patrol Officer Joseph Schany at approximately 10:30 a.m. on April 15, 2009. Mr. Synkiew was driving a blue minivan when he was stopped on a residential street in Minneapolis. Officer Schany was on patrol with another officer in a marked squad car. The police vehicle was equipped with a windshield-mounted camera which is activated when the emergency light is

turned on.

        The defendant's vehicle was stopped on the basis of a 911 report from an identified caller who reported gunshots in the vicinity of 3611 Girard Avenue. The caller stated that two male individuals with guns were seen in the alley. One of the men was described as a heavier-set white male with a shaved head and wearing dark shorts and a red-striped shirt. The second man was described as a taller Hispanic person. As the 911 report was being made, the caller stated that the two men were contemporaneously being observed getting into a blue minivan and heading west on 36th Avenue. The patrol officers were near the scene when the dispatch was received, and upon heading towards the Girard address they saw a blue minivan going northbound on Humboldt Avenue, just off 36th and immediately adjacent to the 3611 Girard location. There was very little, if any, other vehicle traffic in the neighborhood at the time. The officers activated the squad car emergency lights as the minivan approached the Dowling Avenue intersection, and they began to pursue the blue minivan, going north on Humboldt. The van traveled approximately six blocks before the officers caught up to it, at which time the van driver turned south on Morgan Street and pulled over to the curb to stop. The police squad stopped behind the blue minivan.

        The officers initially observed only the driver, and as the vehicle was proceeding to the curb, the driver was seen making movements which Officer Schany interpreted as a effort to conceal something between the seats. Before officers told him to get out of the vehicle, the driver got out of the minivan, with his hands in the air, and stated that "they were shooting at me." The driver, defendant Jimmy Synkiew, met the description of the heavy-set white male with a shaved head, red-striped shirt and black pants, that had been reported in the 911 call.

Meanwhile, the officers had gotten out of the squad car, with handguns drawn, and told the defendant to lay on the ground. Mr. Synkiew promptly complied. He was immediately handcuffed, pat searched, and placed in the back seat of the squad car. The passenger in the van was ordered to get out of the vehicle and was likewise handcuffed and placed in the back seat of the squad car. Officer Schany then returned to the defendant's vehicle and conducted a search of the front seat area. He found a black duffel bag that was laying between the front seats, and upon moving a map inside the bag he saw the silver barrel of a small handgun. The officer took photos prior to removing the handgun from its location in the vehicle.

The vehicle stop was video and audio recorded commencing with the activation of the squad car emergency lights (Hrg. Ex. 1). The camera was rigidly mounted on the windshield and provided a view of the blue minivan and activity to the front of the police vehicle. The audio function recorded only sound made in the passenger area of the squad car. When the officers were in front of the squad car and while they were searching the minivan, they were being observed by the defendant who he was yelling at them from inside the police car. The defendant's statements at that time were recorded and were not the product of police questioning. Officer Schany heard the yelling, and when asked about what was going on in reference to the 911 call, the defendant made additional recorded statements to the officer, including statements in response to questions regarding his criminal history. The officer thereafter advised Mr. Synkiew that he was under arrest for being a felon in possession of a firearm, to which the defendant responded with further statements. There was no Miranda warning given at any time during the stop. The recording lasted approximately 25 minutes and was manually terminated after a tow truck removed the minivan and officers proceeded to leave

3

the scene of the stop. Defendant Jimmy Synkiew was subsequently questioned by law enforcement officers in an interview that was preceded by a Miranda warning (Hrg. Ex. 2).

Based upon the foregoing Findings, the Magistrate Judge makes the following:

**Conclusions**

**Vehicle Stop and Arrest.** The blue minivan driven by defendant Jimmy Synkiew on April 15, 2009, was lawfully stopped on the basis of reasonable suspicion to believe that occupants of the vehicle were engaged in criminal activity and suppression of evidence obtained as a result of the stop is not required. Officers had nearly contemporaneous information from an identified person regarding the involvement of a blue minivan in criminal activity that had taken place in the neighborhood in which the vehicle was observed by the officers. Thereafter, the defendant was lawfully arrested on the basis of probable cause to believe that he was involved in the reported shooting under circumstances in which he got out of his vehicle with his hands in the air before being so ordered by officers, and his physical appearance matched the description provided by the identified 911 caller. Such arrest occurred at the time he was handcuffed and placed in the squad car.

**Vehicle Search.** Suppression of evidence seized from the blue minivan subsequent to defendant Jimmy Synkiew's arrest is not required. The search of the vehicle was lawfully conducted pursuant to the automobile exception to the warrant requirement, which permits a warrantless search when there is probable cause to believe the vehicle contains contraband. United States v. Sample, 136 F.3d 562, 564 (8th Cir. 1998). Probable cause existed in this instance as a result of defendant having been observed taking actions as he was stopping the vehicle which reasonably appeared to officers to be an effort to conceal something between

the seats; the vehicle stop was being made in connection with a reported shooting; and the defendant promptly got out of the vehicle and spontaneously claimed that others were shooting at him. Defendant Jimmy Synkiew's motion to suppress evidence obtained by search and seizure should be denied.

**Stop and Arrest Statements.** Initial statements made by defendant Jimmy Synkiew at the scene of his arrest, as well as statements made by the defendant while he was seated in the squad car and officers were searching the minivan, were not obtained in violation of his constitutional rights and suppression of such statements is not required. Statements made by the defendant upon being asked, "are you a convicted felon" (Hrg. Ex. 1, 10:51:00), were made in response to questioning by officers, without the benefit of the <u>Miranda</u> warning, and the defendant's response, along with statements made thereafter to arresting officers, should be suppressed.

Defendant correctly contends that he was in custody from the moment he was handcuffed. However, statements by defendant prior to being asked whether he was a felon were not the product of interrogation. In particular, defendant's statements while he was seated in the squad car and officers were conducting a search of the minivan were unsolicited and spontaneous and should not be suppressed for that reason. <u>United States v. Waloke</u>, 962 F.2d 824, 829 (8th Cir. 1992). Comments by the defendant that were made prior to being asked whether he was a felon were also made voluntarily and were not made in response to any inquiry. Therefore, such statements were not the result of interrogation having implications with respect to the defendant's Fifth Amendment right to remain silent or his Sixth Amendment right to counsel. The term "interrogation" as contemplated under <u>Miranda</u> can be broadly interpreted

5

to include any words or actions that police should know would be reasonably likely to elicit an incriminating response. Rhode Island v. Innis, 446 U.S. 291, 301-02 (1980). Conversely, officers "cannot be held accountable for unforeseeable results of their words or actions" where there is no reason that they should have known that such words or actions would elicit an incriminating response. Id. at 302. No words or actions by officers prior to defendant being asked about his criminal background were made with the knowledge that an incriminating response would likely be elicited, and defendant's right to remain silent was not thereby implicated. Nonetheless, once officers proceeded to ask Mr. Synkiew whether he was a convicted felon, they were commencing an effort to obtain incriminating information which constituted interrogation and should have been preceded by the Miranda warning. Many of the statements made by the defendant after he had been asked about his felon status were not the result of direct questioning and were essentially spontaneous. Indeed, it seems unlikely that a Miranda warning would have stopped the defendant from his almost ceaseless effort to extricate himself from a difficult situation. Nonetheless, such statements are not separated in time or location so as to purge them of the effects of the failure to give the Miranda advisory. United States v. Griffin, 922 F.2d 1343, 1356 (8th 1990). See Maryland v Shatzer, __ S.Ct. __, 2010 WL 624042 (February 24, 2010).

**Interview Statements.** Defendant Jimmy Synkiew's recorded statements during an interview and questioning at the police department on April 16, 2009, were provided voluntarily and after administration of the Miranda warning, and were not obtained in violation of the defendant's constitutional rights (Hrg. Ex. 2). The interview statements were custodial, but were not obtained as a result of an unlawful vehicle stop and arrest or other unlawful law

enforcement action and suppression of interview statements is therefore not required on grounds that the statements were the fruit of a poisonous tree. See United States v. Walker, 518 F.3d 983, 985 (8th Cir. 2008).

Based upon the foregoing Findings and Conclusions, the Magistrate Judge makes the following:

## RECOMMENDATION

The Court **hereby recommends** that:

1. Defendant Jimmy Pierre Synkiew's Motion to Suppress Evidence Obtained as a Result of Search and Seizure be **denied** [Docket No. 16].

2. Defendant Jimmy Pierre Synkiew Motion to Suppress Statements, Admissions and Answers be **granted in part and denied in part** [Docket No. 17]. Statements to arresting officers made subsequent to defendant being asked whether he was felon should be suppressed. Prior arrest location statements, as well as formal interview statements, should not be suppressed.

Dated:     March 8, 2010    

                                                             s/Arthur J. Boylan
                                                           Arthur J. Boylan
                                                           United States Magistrate Judge

Pursuant to Local Rule 72.2(b), any party may object to this Report and Recommendation by filing with the Clerk of Court, and by serving upon all parties, written objections which specifically identify the portions of the Report to which objections are made and the bases for each objection. This Report and Recommendation does not constitute an order or judgment from the District Court and it is therefore not directly appealable to the Circuit Court of Appeals. Written objections must be filed with the Court before March 23, 2010.

Unless the parties stipulate that the District Court is not required by 28 U.S.C. § 636 to review a transcript of the hearing in order to resolve all objections made to this Report and Recommendation, the party making the objections shall timely order and file a complete transcript of the hearing within ten days of receipt of the Report.